IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| GREYHOUND LINES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  3:08cv00516-WHA |
| ) | |
| THE GOODYEAR ) | |
| TIRE & RUBBER COMPANY, ) | |
| ) | (WO) |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Partial Summary Judgment (Doc. # 205), filed by the Defendant, The Goodyear Tire and Rubber Company ("Goodyear"), on August 11, 2009.

This case arises out of a bus accident that occurred on Interstate 85 in Opelika, Alabama on June 29, 2006.  A bus owned by the Plaintiff, Greyhound Lines Inc. ("Greyhound"), was involved in the accident.  Greyhound alleges in its First Amended Complaint (Doc. # 81) that a tire manufactured by Goodyear was the cause of the accident and seeks to recover damages resulting therefrom.  Goodyear moves this court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for entry of partial summary judgment in its favor with regard to all claims of Greyhound that seek as damages amounts Greyhound paid to or on behalf of passengers who were on its bus during the accident, for which recovery is sought in Counts II, III, IV, and V of its First Amended Complaint.

For the reasons to be discussed, the Motion for Partial Summary Judgment is due to be GRANTED.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of

the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.  FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

On June 29, 2006, a bus owned by Greyhound was involved in an accident on Interstate 85 in Opelika, Alabama. Greyhound alleges that a defective tire manufactured by Goodyear caused the accident. The accident injured several passengers, who eventually were taken to the hospital. Thereafter, Greyhound paid the medical expenses of several of the injured passengers. Greyhound also paid several passengers various sums of money in consideration of the passengers signing a form releasing Greyhound of any future liability for any injuries resulting from the bus accident. Greyhound made these voluntary payments without notifying Goodyear of the accident, the injuries, or the settlement agreements. Greyhound now seeks to recover from Goodyear the payments it made to and on behalf of the passengers.[1]

---

[1] Greyhound also seeks to recover payments made to its bus driver, Ms. Leslie C. Croswell, and damages to the bus itself. Those damages are not the subject of this summary judgment motion.

## IV. <u>DISCUSSION</u>

Goodyear contends that there is no lawful basis for a recovery from it of these payments voluntarily made by Greyhound, regardless of whether a defective tire was the cause of the accident.

In response to Goodyear's Motion for Partial Summary Judgment, Greyhound has pointed to various theories of recovery, which it states were pled in its First Amended Complaint and provide a basis for its recovery from Goodyear of the payments Greyhound made to its passengers. The court will address each of these theories in turn.

**A.      Assignment**

In its First Amended Complaint, Greyhound asserts that the passengers injured in the accident assigned to Greyhound their potential personal injury claims arising out of the accident. (Doc. #81, ¶¶ 29, 57). Goodyear argues that it is entitled to summary judgment on Greyhound's claim for payments made to and on behalf of the passengers, because the passengers did not, in fact, assign any of their personal injury tort claims to Greyhound, and even if the passengers did assign such claims to Greyhound, such assignments are unenforceable under Alabama law. In response, Greyhound concedes that no passengers assigned their personal injury claims to Greyhound, and also concedes that such an assignment would be unenforceable under Alabama law (Doc. #216, p. 5) ("To this extent only, Goodyear's Motion is well-taken; under Alabama law, none of these passengers could have assigned their personal injury action to Greyhound.").

Accordingly, to the extent that Greyhound is using an assignment theory to recover the payments made to the passengers, Goodyear's summary judgment motion is due to be granted.

**B.      Contractual Subrogation**

In Count V of the First Amended Complaint, Greyhound claims it can recover the passenger payments as damages based on a contractual subrogation right.  Goodyear argues that it is entitled to summary judgment on this theory because contractual subrogation does not apply to the circumstances of this case.   In particular, Goodyear argues that the passenger release documents have no subrogation clause; voluntary payments to third parties do not create subrogation; the policy behind subrogation in prohibiting double-recovery is not implicated, because the passengers have brought no suits against Goodyear for their injuries; and even if the passenger release documents had created a contractual subrogation right, Greyhound cannot recover because the passengers have not been shown to have been "made whole."  In response, Greyhound recognizes that summary judgment would be appropriate if no subrogation clause is in the release documents or if the passengers were not "made whole."  Greyhound nonetheless contends that, as a matter of fact, the release documents operate as a subrogation agreement.

The court agrees with Goodyear that the various release documents have no language that could be construed as creating a subrogation agreement between Greyhound and the injured passengers. Greyhound cites the following language in the release forms as evidence of a contractual subrogation right:  The Release releases "all other persons, firms, corporations . . . from any and all claims, actions . . . in any way growing out of any . . . personal injuries . . . resulting . . . from" the Opelika accident (Doc. #216, p.6).  This is general release language and creates no right of subrogation.  Rather, the passenger documents merely purport to release Greyhound and, in fact, "all other[s]", from future liability for tort claims by the passengers stemming from the bus accident.  Accordingly, and since there in no other evidence from which

a contract could be found, Goodyear is entitled to summary judgment on Greyhound's contractual subrogation claim.

C.     Greyhound's "Release" Theory

Greyhound argues separately that it can recover the payments it made to its passengers based on a release theory of contribution. According to Greyhound, because it obtained a release from the passengers as to "all claims against all tortfeasors," Greyhound is now entitled to recover from Goodyear the amount it paid beyond Greyhound's proportionate share of fault, which it asserts is zero. As support, Greyhound cites *Murphy v. Fla. Keys Elec. Coop. Assoc. Inc.*, 329 F.3d 1311 (11th Cir. 2003) as standing for the proposition that "a party settling a claim through a Release by an injured person can sue a non-settling tortfeasor provided that the settling party paid the injured person for all damages suffered by that person." (Doc. # 216, p.4). *Murphy* stands for no such proposition.

In *Murphy*, the Eleventh Circuit addressed "whether the defendant in an admiralty tort action who settles with the plaintiff without obtaining a release from liability for other potential defendants can then be entitled to contribution from them toward the amount it paid to settle its own liability." *Id.* 1312-13. The Eleventh Circuit concluded that "a settling defendant cannot bring a suit for contribution against a nonsettling defendant who was not released from liability to the plaintiff by the settlement agreement." *Id.* at 1313. Thus, *Murphy* does not support Greyhound's argument that its voluntary settlement payments are recoverable as damages.

In fact, *Murphy* actually cuts against Greyhound's position. Much like the settling defendant in *Murphy*, Greyhound is essentially arguing for two unacceptable alternatives. *See*

*id.* at 1315 (stating that "[t]here are two ways to look at what [the settling defendant] is seeking to do, and both are telling."). First, Greyhound is seeking to escape the bargain it struck with the passengers about the extent of its liability, by shifting the entire settlement figure to Goodyear. Goodyear, however, is not responsible for the settlement Greyhound reached with the passengers, because Goodyear had no knowledge of any such settlement until it was sued. Second, Greyhound is seeking to recover from Goodyear the amount of the settlement it paid to the passengers that it claims is attributable to Goodyear's liability. This is likewise untenable because the settlement does not appear to release Goodyear in whole or in part, as no evidence suggests the release of Goodyear was within the contemplation of Greyhound and the injured passengers when the parties struck the agreement.[2] The court thus rejects Greyhound's release theory that the payments are recoverable because of its settlement with the passengers.[3]

---

[2] The court expresses no opinion as to the ultimate enforceability of the release. The court only addresses the validity of the release for the purposes of this motion, and, for this purpose, the record does not indicate that the settlement agreement between Greyhound and the injured passengers released Goodyear. *See Pierce v. Orr*, 540 So. 2d 1364, 1367 (Ala. 1989) ("[U]nnamed third-parties, referred to in the release as "any and all parties" or by words of like import, who have paid no part of the consideration and who are not the agents, principals, heirs, assigns of, or who do not otherwise occupy a privity relationship with, the named payors, must bear the burden of proving by substantial evidence that they are parties intended to be released, i.e., that their release was within the contemplation of the named parties to the release.").

[3] The court does not suggest that Goodyear did anything wrong in settling the passengers' claims against it. To the contrary, it is the policy of the law to encourage settlements.
*Allstate Ins. Co. v. Amerisure Ins. Cos.*, 603 So. 2d 961, 965 (Ala. 1992). The point is that Greyhound cannot negotiate a settlement, without Goodyear's knowledge or participation, and then force Greyhound to pay for it.

**D.     Breach of Warranty**

Greyhound argues that it can recover the passenger payments as incidental or consequential damages flowing from its breach of warranty claim (Count IV).  In support, Greyhound cites *Storey v. Day Heating & Air Conditioning Co.*, 319 So. 2d 279 (Ala. Civ. App. 1975) and *Winchester v. McCulloch Bros. Garage Inc.*, 388 So. 2d 927 (Ala. 1980).  Both cases provide no support for Greyhound's argument.  In *Storey*, the court addressed whether the defendant was a "merchant," which is necessary for the warranty of merchantability to apply; the court never mentions consequential and incidental damages.  *Storey*, 319 So. 2d at 83-84.  In *Winchester*,  the court noted that Ala. Code § 7-2-714(3) provides for the recovery of incidental and consequential damages in a breach of warranty action in the proper circumstances, but then determined that the price of a substitute car was not a recoverable measure of consequential damages.  *Winchester*, 388 So. 2d at 929.  The case provides no support for the idea that a voluntary settlement payment to a third party is recoverable as a measure of damages in a breach of warranty action.  The court thus rejects the theory that the passenger payments are recoverable as incidental or consequential damages flowing from the alleged breach of warranty.

**E.     Implied Contractual Indemnity**

Greyhound alleges that it can recover the passenger payments under the doctrine of implied contractual indemnity, citing *Price v. CTB., Inc.*, 168 F. Supp. 2d 1299 (M.D. Ala. 2001).  In response, Goodyear contends that Greyhound failed to plead any implied contract of indemnification and should be precluded from asserting this theory because the time to amend the complaint has passed.  The court agrees that Greyhound did not plead any implied

contractual indemnity theory, and the motion for summary judgment is due to be granted on that basis.  Nonetheless, even if Greyhound had pled this theory, Goodyear would still be entitled to summary judgment, because an implied contractual indemnity theory is not applicable in this case.

Under the doctrine of implied contractual indemnity, Alabama courts recognize that a manufacturer of a product has impliedly agreed to indemnify the seller when "1) the seller is without fault, 2) the manufacturer is responsible, and 3) the seller has been required to pay a monetary judgment."  *Id.* at 1301 (citing *Allstate Ins. Co. v. Amerisure Ins. Cos.*, 603 So. 2d 961, 963 (Ala.1992)).  Even assuming that the circumstances and relations of the parties in this case could give rise to an implied contract of indemnification, which the court rejects, the doctrine demands that the seller has been required to pay a monetary judgment by a court.   In this case, Greyhound has presented no evidence that it has ever been required to pay any judgment arising from the bus accident.  Greyhound voluntarily paid the passengers  to absolve itself from liability.  Therefore, the doctrine of implied contractual indemnity is of no help to Greyhound.

### F.     Implied Noncontractual Indemnity

Greyhound argues that it is entitled to indemnity from Goodyear because Greyhound anticipates that, at some point, Goodyear will argue that Greyhound is a joint tortfeasor to the accident.  This argument is without merit for several reasons.  First, the court cannot make a summary judgment determination based on one party's anticipations.  Second, Greyhound did not plead a claim for implied noncontractual indemnity in its First Amended Complaint, and

therefore any arguments concerning indemnity are not relevant to Goodyear's summary judgment motion.

Third, even if the court were to consider Greyhound's implied noncontractual indemnity theory, which it does not, Greyhound has failed to show that such a theory would entitle it to relief.  As a general rule under Alabama law, "there is no right of indemnity or contribution among joint tortfeasors."  *Coates v. CTB, Inc.*, 173 F. Supp. 2d 1200, 1203 (M.D. Ala. 2001) (citing *Kennedy Engine Co. v. Dog River Marina & Boatworks, Inc.*, 432 So. 2d 1214, 1215 (Ala. 1983) and *Consol. Pipe & Supply Co. v. Stockham Valves and Fittings, Inc.*, 365 So. 2d 968, 970 (Ala. 1978)).  There is an exception to this rule, however, that allows a joint tortfeasor to claim indemnity "where he has not been guilty of any fault, except technically or constructively, or where both parties are at fault, but the fault of the party from whom indemnity is claimed was the efficient cause of the injury."  *Mallory S.S. Co. v. Druhan*, 84 So. 874, 877 (1920); *see also Coates*, 173 F. Supp. 2d at 1203-04  (dicussing the *Mallory* exception). Greyhound argues that this exception allows recovery of the voluntary payments it made to the passengers.

The court disagrees.  Even if the court were to agree that Greyhound's negligence was passive, the voluntary payment doctrine, discussed more fully below, still precludes Greyhound's recovery of the settlement payments.  Neither of the cases that Greyhound cites in support of its noncontractual indemnity theory involved voluntary settlements, but rather lawsuits which prompted the settlement agreements.  *City of Mobile v. George*, 45 So. 2d 778, 779 (Ala. 1950); *Unicore, Inc. v. Tennessee Valley Authority*, 768 F.2d 109, 110 (6th Cir. 1985). In addition, Goodyear's complete lack of notice of the settlement negotiations precludes any

10

implied indemnification. If Greyhound wanted to recover the passenger payments, it should have, at the very least, notified Greyhound that it was settling the passengers' claims. *See Burke v. Ripp*, 619 F.2d 354, 360 (5th Cir. 1980)[4] ("[A]n indemnitee can best protect himself and his indemnitor by offering the indemnitor the choice of approving the settlement or taking over the defense, and we strongly suggest that future would-be indemnitees adhere to this procedure."). Accordingly, to the extent that Greyhound is attempting to recover the passenger payments based on an implied noncontractual indemnity theory, Goodyear's motion for summary judgment is due to be granted.

### G.      Goodyear's Affirmative Defense of Voluntary Payment

Even if the court were to accept that any of Greyhound's theories of recovery are viable in this case, the court would find partial summary judgment due to be granted based on Goodyear's affirmative defense of voluntary payment. In support of its voluntary payment defense, Goodyear cites *Mt. Airy Ins. Co. v. Doe Law Firm*, 668 So. 2d 534 (Ala. 1995), which described the voluntary payment doctrine as follows:

> [W]here one party, with full knowledge of all the facts, voluntarily pays money to satisfy a colorable legal demand of another, no action will lie to recover such a voluntary payment, in the absence of fraud, duress, or extortion.

*Id.* at 537 (citation and internal quotation marks omitted). In *Mt. Airy*, a professional liability insurer paid to settle a potential malpractice claim against its insured and then sought reimbursement from the insured law firm for the amount paid to settle the claim. *Id.* at 535-36.

---

[4] Decisions of the Fifth Circuit made prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

Even though the insurer gave notice to the insured law firm that it would seek reimbursement, the court concluded that the insurer was not entitled to reimbursement because the payment was voluntary. *Id.* at 539. In so concluding, the court noted that "the mere threat of legal proceedings is insufficient to constitute the duress needed to make the payment of money involuntary." *Id.* (citation omitted).

The court agrees with Goodyear that the voluntary payment doctrine precludes any recovery of the payments that Greyhound made to the passengers. Like the defendant insurer in *Mt. Airy*, Greyhound made a voluntary settlement payment to satisfy "colorable legal demand[s]." *Id.* at 537. In fact, the case for denying reimbursement of the settlement payment is even stronger in this case than in *Mt. Airy,* because Goodyear had absolutely no notice of any settlement negotiations.

Greyhound's attempt to distinguish *Mt. Airy* is unpersuasive. Greyhound contends that *Mt. Airy* is distinguishable on the ground that, in *Mt. Airy*, money was paid directly to the defendant, while in this case the money was paid to a third party, allegedly as a consequence of the defendant's wrongdoing. In support of its argument, Greyhound cites *RSUI Group, Inc. v. Willis of Ala., Inc.*, 2007 WL 2469571 (S.D. Ala. Aug. 29, 2007). In *RSUI*, the defendant insurance company issued a binder for commercial property coverage to the insured. *Id. *1*. Despite the plaintiff insurer's repeated instructions to include in the binder an exclusion for a particular building, the defendant insurance company issued the binder without the exclusion. *Id.* The building was eventually destroyed by fire and, due to the defendant's mistake in omitting the exclusion of coverage, the plaintiff had to pay approximately $210,000 to fix the building. *Id.* The court rejected the defendant's voluntary payment doctrine argument because

12

"the defendant's blunder legally obligated the plaintiff to honor the insured's claim." *Id.* The court reasoned that "it would make little sense to hold that a party with an inescapable obligation, wrongfully created by another, to pay an innocent third party forfeits all right to be made whole by the wrongdoer if he honors that obligation." *Id.*

This case is readily distinguishable from *RSUI*. Goodyear, unlike the defendant insurance company in *RSUI*, did nothing that legally bound Greyhound to make settlement payments to the passengers. No legal judgment or contract bound Greyhound to make the payment. Rather, Greyhound entered into a bargained-for exchange with the passengers in order to limit its own liability in the accident. Therefore, the voluntary payment doctrine entitles Goodyear to summary judgment on all of Greyhound's claims seeking to recover the voluntary payments made to passengers.

## V. CONCLUSION

Even if it should ultimately be determined that a defective tire manufactured by Goodyear caused or contributed to the accident, the court can find no basis whatsoever for holding Goodyear liable to Greyhound for payments voluntarily made by Greyhound to its passengers, without the knowledge of Goodyear.

For the reasons discussed, it is hereby ORDERED as follows:

The Defendant Goodyear's Motion for Partial Summary Judgment (Doc. # 205) is GRANTED, and judgment is entered in favor of Goodyear and against Greyhound with respect to all claims of Greyhound that seek as damages amounts Greyhound paid to passengers who were on its bus during the accident for which recovery is sought in Counts II, III, IV, and V of its First Amended Complaint.

Done this 23rd day of September, 2009.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE